IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| COMMISSION ON HEALTH CARE CERTIFICATION, INC. d/b/a INTERNATIONAL COMMISSION ON HEALTH CARE CERTIFICATION and V. ROBERT MAY III, RH.D., | : : : : : : : : | Civ. A. No.: 3:22cv39 _____ |
| Plaintiffs, | : : | **VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL INJUNCTIVE RELIEF SOUGHT** |
| v. | : : | |
| FIG SERVICES, INC., SHELENE J. GILES, MS, BSN, BA, RN, CRC, CNLCP, CLCP, MSCC, LNCC, and SUSAN RIDDICK-GRISHAM, RN, BA, CLCP | : : : : : : | |
| Defendants. | : : | |

Plaintiffs Commission on Health Care Certification, Inc. d/b/a International

Commission on Health Care Certification ("ICHCC™" or "the Commission") and

V. Robert May III, Rh.D. ("Dr. May," collectively "Plaintiffs"), by and through

their undersigned attorneys, hereby file their Verified Complaint and allege against

Defendants FIG Services, Inc. ("FIG"), Shelene J. Giles, MS, BSN, BA, RN, CRC,

CNLCP, CLCP, MSCC, LNCC ("Giles"), and Susan Riddick-Grisham, RN, BA,

CLCP ("Riddick-Grisham," collectively "Defendants") as follows:

## THE PARTIES

1.      The Commission is the oldest and largest international certifying

agency in the field of life care planning service delivery in the United States and

Canada, and the only all-inclusive agency to offer its Certified Life Care Planner™

(CLCP™) and Canadian Certified Life Care Planner™ (CCLCP™) credentials to

qualified health care professionals from many diverse academic degree education

and professional backgrounds.  It is a privately held corporation, organized under

the laws of Commonwealth of Virginia, and located at 13801 Village Mill Drive,

Suite 103, Midlothian, Virginia 23114.

2.      The Commission owns the common law trademarks, CERTIFIED

LIFE CARE PLANNER™ and CLCP™, which have been continuously used in

interstate commerce since at least March of 1996 for testing and certifying

professional life care planners.

3.      The Commission also owns the common law trademarks,

MEDICARE SET-ASIDE CERTIFIED CONSULTANT™ and MSCC™, which

have been continuously used in interstate commerce since at least 2004 for testing

and certifying professionals trained in Medicare set-aside trust arrangements.

4.      Dr. May is the founder, President, and Chief Executive Officer of the

Commission.  He has a Doctorate of Rehabilitation and resides in the

Commonwealth of Virginia. He maintains his principal place of business at 13801 Village Mill Drive, Suite 103, Midlothian, Virginia 23114.

5. It is believed that Defendant FIG is a privately held corporation, organized under the laws of North Carolina, and located at 86 Ponderosa Drive, Canton, North Carolina 28716.

6. Defendant Giles is the founder and President of FIG. She is believed to be a resident of North Carolina, who maintains FIG's principal place of business at 86 Ponderosa Drive, Canton, North Carolina 28716.

7. Defendant Riddick-Grisham is believed to be a resident of the Commonwealth of Virginia, who lists her business' address as 576 N. Birdneck Road #702, Virginia Beach, Virginia 23451.

## JURISDICTION AND VENUE

8. This is an action for unfair competition relating to common law trademarks and false advertising, arising under the Lanham Act, 15 U.S.C. § 1125(a), and state law tort claims for defamation, tortious interference with prospective business advantages and relationships, and business conspiracy.

9. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331 over Plaintiffs' federal claims and supplemental jurisdiction over Plaintiffs' state law tort claims pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendant Riddick-Grisham because she resides and maintains her business in the Commonwealth of Virginia.

11.     This Court has personal jurisdiction over Defendants FIG and Giles pursuant to Virginia's long-arm statute, § 8.01-328.1, and the Due Process Clause of the United States Constitution. Specifically, it is believed that both FIG and Giles solicit and transact business in this Commonwealth and supply services in this Commonwealth. Moreover, FIG's and Giles' tortious actions have injured Plaintiffs, who reside and conduct business within Virginia.

12.     Venue is proper in the Richmond Division of the U.S. District Court for the Eastern District of Virginia because Defendants' tortious actions were disseminated to a wide audience and potential consumers through interstate commerce over the internet, which includes persons who reside within the Richmond Division—where both Plaintiffs reside and regularly conduct business. Moreover, it is believed that Defendant Riddick-Grisham resides and regularly conducts business within the Eastern District of Virginia.

## STATEMENT OF THE FACTS

### The Commission:

13.     Dr. May, with the help of a number of other rehabilitation professionals, established the Commission as the "Commission on Disability Examiner Certification" in 1994 in response to the health care industry's need for

certified clinical examiners in impairment and disability rating practices. The first certifications in life care planning were offered in the spring of 1996 (the first CLCP™ certificates issued in July 1996).

14.     The Commission updated its name in spring of 2002 to the "International Commission on Health Care Certification™" in an effort to better reflect the various professional areas it represented.

15.     The Commission has broadened its influence in the medical and rehabilitation marketplace over the years through its extensive research and development of a certification program in life care planning and related catastrophic case management.

16.     Currently, comprehensive training programs in life care planning have evolved to respond to this need for life care planning services as applied to catastrophic cases. Vocational/medical rehabilitation case managers and rehabilitation nurses have established themselves as consultants and case managers in these catastrophic cases and often detail the medical and rehabilitation needs of catastrophically disabled and injured persons.

17.     Thus, the Commission developed the CLCP™ credential in response to the rapid growth and influence of case management in catastrophic disabilities and managed care in today's health care industry.

18.    Validity and reliability research of the CLCP™ credential was completed through Southern Illinois University and is based specifically on the roles and function of case managers and rehabilitation nurses who provide this service as part of their case management structure. The ICHCC™ conducted and updated a second Role and Function Study in 2020.

19.    The Commission is dedicated to the development and administration of well-researched, standardized tests designed to measure health care provider certification applicants' working knowledge and skills of the respective health care service delivery system to which they apply for certification.

20.    To achieve its mission, the Commission established the following goals: (1) Develop national and international tests that measure the health care provider applicant's working knowledge of disability, medical systems, associated disabilities, and treatment/maintenance protocol required to sustain life within an acceptable comfort level; (2) Conduct ongoing research in terms of test-item validity and reliability, ensuring that tests accurately reflect a credential's subject matter and fairly measure the candidate's required knowledge-base; (3) Procure qualified Commissioners to sit on the Board of Commissioners to represent the Commission's credentialed candidates and certified professionals; and (4) Establish and monitor recertification policies to measure continued competence

6

and/or to enhance the continued competence of all certified health care professionals under the Commission.

21.    Over the last quarter of a century, to ensure competency and excellence in the field of life care planning, the Commission has awarded its CLCP™ certification to over 1600 rehabilitation professionals who have successfully met its stringent requirements, which include vocational rehabilitation evaluators/counselors, medical physicians, nurses, occupational therapists, physical therapists, speech therapists, social work professionals, psychologists, and physician assistants.

22.    Indeed, since 1996, the Commission's CLCP™ certification has become famous as the hallmark of a well-trained and qualified life care planning professional, and has achieved secondary meaning within the life care planning industry across the nation.

23.    In 2004, the Commission expanded its certification process and developed its MEDICARE SET-ASIDE CERTIFIED CONSULTANT™ (MSCC™) credential, which established a process for testing and certifying professionals who work within the workers' compensation benefit system as either a health care professional, legal representative, or as an insurance claims adjuster, trained in Medicare set-aside trust arrangements.

**Defendants FIG and Giles:**

24. Defendant Giles has operated FIG—a life care planning educational company authorized by the Commission to provide the 120 life care planning pre-certification training for the CLCP™ credential—for a number of years.

25. Within the last year, however, the Commission raised with Giles a number of serious concerns it had relating to FIG's CLCP™ training program.

26. FIG also offers specialized training related to life care planning specifically tailored for nurses and physicians.

27. Recently, FIG's life care planning training program had devolved into a confusing one-size-fits-all curriculum that ignored the important distinctions between these specialized sub-fields of life care planning and the broader knowledge base required to attain the more comprehensive CLCP™ certification.

28. Moreover, the administration of FIG's certification programs became careless with sub-par standards.

29. For example, recently FIG was allowing students to print FIG Certificates of Completion for submission to the Commission *PRIOR* to successfully completing FIG's training program.

30. Similarly, FIG's peer-review techniques failed to provide its students with in-depth feedback on sample life care plans they submitted for grading—often

FIG awarded students an unearned perfect score on sub-standard life care plans with little critique beyond an undeserved, "Well done!"

31.    Indeed, one such plan critiqued as "well done," contained numerous misspellings and appeared to be plagiarized as it contained another student's name and résumé as the author.

32.    The drafting of a sample life care plan is a critical step in a student's professional development that ensures that the student understands the methodology of the life care plan's components from a sample case and the various factors involved in professional life care planning.

33.    Accordingly, on May 18, 2021, the Commission suspended FIG as an authorized training program for the CLCP™ certification.

34.    Despite repeated attempts from the Commission to work with Giles to bring FIG's training program into compliance with its standards for CLCP™ certification, Giles ultimately stopped cooperating with the Commission.

35.    Accordingly, the Commission is prepared to revoke Giles' and FIG's authority to serve as a training program for the CLCP™ credential.

**Riddick-Grisham and FIG's Launch of Its LCP-C Certification:**

36.    Riddick-Grisham is good friends with Giles and questioned FIG's suspension with others.  Riddick-Grisham is also the current Chair of the International Academy of Life Care Planning ("IALCP"), which comprises the life

care planning section of the International Association of Rehabilitation Professionals ("IARP"). The IARP is the professional association to which many CLCP™ professionals belong.

37.     The IALCP has over 500 members.

38.     In the fall of 2021, in apparent retribution for suspending Giles' and FIG's authority to train students for the CLCP™ credential, Riddick-Grisham embarked on a campaign to discredit and malign Dr. May and the Commission among the professional life care planning community.

39.     Specifically, Riddick-Grisham began contacting individual members of the IALCP to discuss Giles' and FIG's suspension, while falsely claiming that the Commission no longer held a trademark on the CLCP™ certification and that the Commission and Dr. May "do not pay their bills."

40.     Kristi Bagnell, MD, FAAP, CLCP™, who is the Chair-elect of the IALCP, reached out to the Commission to discuss the trademark issue, raised by Riddick-Grisham, and it was explained that although the Commission has never formally registered its CLCP™ trademark with the United States Patent and Trademark Office, the CLCP™ credential is a long-standing common law trademark, which is owned by the Commission.[1]

---

[1]     The Commission held a formal registration on the separate wordmark, "CERTIFIED LIFE CARE PLANNER (CLCP)," from 2002 until 2009. The Commission, however, did not renew the formal registration of that separate

41.     Despite the Commission's and Dr. Bagnell's efforts to clarify the status of the CLCP™ mark, Riddick-Grisham began spreading rumors about Dr. May and Commission beyond the IALCP to the IARP Board of Directors.

42.     In a letter dated October 31, 2021, the President of the IARP, along with Riddick-Grisham and other members of the life care planning community, sent Dr. May and the Commission a letter, claiming that "members of the Life Care Planning section have come forward to the International Academy of Life Care Planners (IALCP) board with rumors circulating within the life care planning community regarding changes at ICHCC™."

43.     In addition, the letter misleadingly asserted that "the trademark of the life care planning certification has not been renewed."

44.     It is believed that Riddick-Grisham's concerted attempts to falsely malign and discredit Dr. May and the Commission were an effort to induce and assist Giles and FIG to create out of thin air a brand new "credential" that would be easily confused with the Commission's well-established CLCP™ certification.

45.     On or about November 6, 2021, FIG began advertising that it would be offering a brand-new life care planning credential, "Life Care Planning –

wordmark in 2009. The Commission attempted to re-register the same wordmark in 2018, but expressly abandoned that application in 2019.

Certified," designated by the acronym, "LCP-C." *See, e.g.,*
https://www.figeducation.com; https://www.lifecareplanningcertification.com/.

46.    Incredibly, one of FIG's websites confusingly and deceptively suggests that LCP-C credential is a necessary prerequisite to practice as a qualified professional life care planner: "FIG's Life Care Planning – Certified (LCP-C) credential was designed for the medical, healthcare, and rehabilitation provider wishing to gain the competency learning and comprehensive knowledge which is necessary to practice as a QUALIFIED Life Care Planner." *See* https://www.figeducation.com/certification/ (emphasis in original). A true and correct copy of the foregoing website is attached hereto as "Exhibit A."

47.    In an effort to specifically target life care planning professionals, Giles subsequently published this same confusing and misleading statement to an online LinkedIn account that she maintains.

48.    Moreover, on or about November 8, 2021, Riddick-Grisham republished portions of the same misleading statement on a computer listerserv maintained by IALCP and also in an e-mail blast to a number of members of the IALCP, entitled "A new LCP Certification."

49.    FIG's new LCP-C "credential" is specifically designed to confuse the public with the Commission's CLCP™ credential—the CLCP™ being established

12

over 25 years ago to provide reliable certification to professionals in the life care planning field.

50. In designing its acronym for the new LCP-C "credential," FIG simply moved the "C" from the beginning of Commission's CLCP™ mark to the end of FIG's "credential."

51. Moreover, FIG's purported new "certification" is nothing more than a money making scheme, developed to free ride on the coattails, hard work, research, and investment involved in the Commission's efforts to develop and refine the CLCP™ credential over the course of a quarter century.

52. This is starkly demonstrated by FIG's willingness to award its LCP-C "credential" to anyone holding a valid CLCP™ credential with the payment of a $99-certification fee and the submission of a passable "redacted Life Care Plan." *See* https://www.lifecareplanningcertification.com/get-certified/. A true and correct copy of the foregoing website is attached hereto as "Exhibit B."

53. Indeed, unlike the Commission's CLCP™ credential, it appears that FIG does not require a candidate to pass any certification exam to receive its LCP-C credential beyond the submission of a "redacted Life Care Plan." *See id.*

54. The purpose of the Commission's Certified Life Care Planner™ examination is critical to objectively assess the knowledge and skills that are

necessary for the processing, documentation, and writing of a valid the life care plan for a disabled individual.

55. FIG's slapdash certification process is directed to the same market of life care planning professionals as the Commission's CLCP™ credential and misleadingly suggests that its LCP-C credential is equivalent to CLCP™, thereby injuring the value, credibility, and good will associated with the Commission's famous CLCP™ mark.

56. In addition to its LCP-C credential, FIG also simultaneously created another new certification, Medicare Set-Aside (MSA-C), to compete with the Commission's MEDICARE SET-ASIDE CERTIFIED CONSULTANT™ (MSCC™) credential, which was established in 2004 as a process for testing and certifying professionals who work within the workers' compensation benefit system as either a health care professional, legal representative, or as an insurance claims adjuster, trained in Medicare set-aside trust arrangements.

57. FIG's MSA-C credential similarly targets and is likely to cause confusion with the Commission's MSCC™ certification among individuals seeking to become a certified consultant, skilled in developing Medicare set-aside calculations.

**The Aftermath:**

58.    FIG's advertisement, along with Giles' and Riddick-Grisham's
publications about FIG's new credentials, sowed confusion and uncertainty among
members of the IALCP, CLCP™ professionals, and the life care planning
community about the status of the Commission's CLCP™ credential.

59.    In addition to causing a flurry of confusion on IALCP's listserv, both
the Commission and Dr. May subsequently received a number of inquiries from
accredited CLCP™ professionals and potential CLCP™ candidates as to whether
FIG's new LCP-C credential was associated with or endorsed by the Commission.

60.    Interestingly, in the days immediately following FIG's launch of its
new LCP-C "credential," the IALCP awarded Giles its "Outstanding Life Care
Planning Educator Award."

61.    This came as a jaw-dropping surprise to many members of the
IALCP, given FIG's and Giles' recent efforts to sow confusion in the life care
planning profession and undermine the CLCP™ credential—which many
professional life care planners hold.  Three others served on the "Outstanding Life
Care Planning Educator Award" selection committee and one of the three was
Elizabeth Zaras, who is Riddick-Grisham's business partner

62.    Riddick-Grisham served as one of the leading members of the
selection committee and, upon information and belief, coerced and manipulated the

15

nomination and selection process so that Giles would receive the IALCP's
"Outstanding Life Care Planning Educator Award."

63.     Indeed, even the IALCP's chair-elect, Dr. Bagnell, who was not
involved in the decision to give Giles the award, was blind-sided by the decision.

64.     Based on information that Plaintiffs have received, it is believed that
Riddick-Grisham conspired with a small number of members within the IALCP—
including Giles herself—to select Giles as the award-winner in a concerted effort
to bolster the credibility for FIG's confusing new "credential" and suggest
endorsement by the IALCP.

65.     As a proximate result of Defendants' individual and collective
outrageous and tortious actions, the Plaintiffs have been injured and will continue
to accrue pecuniary damages.

66.     Indeed, Defendants' tortious actions have undermined and tarnished
the Commission's professional reputation and the value of its well-established
common law trademarks.  Moreover, their tortious actions have harmed all life
care planning professionals who have worked hard to earn the CLCP™
certification.

67.     Similarly, Defendants' tortious actions have harmed Dr. May's and
the Commission's professional reputations, which has already resulted in lost
business and pecuniary injury.

## COUNT ONE
### Unfair Competition/Infringement of Common Law Trademarks
### in Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)
### (Against Defendant FIG)

68.    Plaintiffs incorporate by reference each of the allegations set forth in the foregoing paragraphs 1-67 above as if fully set forth herein.

69.    FIG has committed unfair competition and infringement of the Commission's common law trademarks in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) by marketing and promoting its newly created "credential," "Life Care Planning – Certified," designated by the acronym, "LCP-C"—which respectively are likely to cause confusion with the Commission's CERTIFIED LIFE CARE PLANNER™ and CLCP™ marks among life care planning professionals, those seeking to obtain certification as a Certified Life Care Planner™, and those seeking out the services of qualified life care planners.

70.    As described above, the Commission owns the common law trademarks CERTIFIED LIFE CARE PLANNER™ and CLCP™, which it has continuously used in interstate commerce since at least the spring of 1996 for certifying professional Life Care Planners across the nation.

71.    Similarly, FIG's Medicare Set-Aside Certification and MSA-C credential is likely to cause confusion with the Commission's MSCC™ certification among individuals seeking to become a certified consultant, skilled in developing Medicare set-aside calculations.

72.     As described above, the Commission owns the common law trademarks MEDICARE SET-ASIDE CERTIFIED CONSULTANT™ and MSCC™, which it has continuously used in interstate commerce since at least 2004 for certifying professionals who work within the workers' compensation benefit system as either a health care professional, legal representative, or as an insurance claims adjuster, trained in Medicare set-aside trust arrangements.

73.     As described above, the Commission's marks are distinctive and have acquired secondary meaning in their respective industries.

74.     FIG advertised, marketed, and promoted its newly created "credentials" in interstate commerce to the public on at least the following websites: https://www.lifecareplanningcertification.com and/or https://www.figeducation.com.

75.     As described above, FIG's promotion of its new LCP-C "credential" is designed to sow confusion in at least the following ways:  through FIG's similar acronym for the new LCP-C "credential"; its suggestion that the new "credential" is necessary to be a "QUALIFIED" life care planner; and FIG's marketing, which references and suggests equivalence to the Commission's well-established and widely accepted CLCP™ credential.

76.     Similarly, FIG's substitution of a single letter "C" with an "A" in its MSA-C "credential" is likely to cause confusion with the Commission's well-established MSCC™ common law trademark.

77.     As a proximate result of the confusion caused by FIG's tortious behavior, the Commission has been damaged and will continue to accrue damages in the form of pecuniary loss, reputational damage, and loss of good will and standing in the life care planning community and marketplace.

WHEREFORE, Plaintiffs respectfully request that this Court enter Judgment in favor of Plaintiffs and against FIG and grant Plaintiffs all of the following relief:

A.     Adjudge that FIG has committed unfair competition and trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A);

B.     Award the Commission compensatory damages, treble damages, disgorgement of FIG's profits, pre-judgment and post-judgment interest, and costs for FIG's violation;

C.     Declare this to be an exceptional case pursuant to 15 U.S.C. § 1117(a) and award Plaintiffs their attorneys' fees and costs; and

E.     Grant Plaintiffs such other and further relief as this Court deems just and proper.

## COUNT TWO
### Aiding & Abetting Unfair Competition/
### Contributory Infringement of Common Law Trademark in
### Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)
### (Against Defendants Giles and Riddick-Grisham)

78.    Plaintiffs incorporate by reference each of the allegations set forth in

the foregoing paragraphs 1-77 above as if fully set forth herein.

79.    As described above, FIG has committed unfair competition and

infringement of the Commission's common law trademarks in violation of the

Lanham Act, 15 U.S.C. § 1125(a)(1)(A) by marketing and promoting its newly

created "credential," "Life Care Planning – Certified," designated by the acronym,

"LCP-C"— which respectively are likely to cause confusion with the

Commission's CERTIFIED LIFE CARE PLANNER™ and CLCP™ marks among

life care planning professionals, those seeking to obtain certification as a Certified

Life Care Planner™, and those seeking out the services of qualified life care

planners.

80.    Defendants Giles and Riddick-Grisham aided and abetted and/or

contributed to FIG's unfair competition and infringement of the Commission's

common law trademarks by intentionally marketing and promoting FIG's "Life

Care Planning – Certified" certification and LCP-C "credential," despite knowing

that they would likely cause confusion in the life care planning market with the

Commission's well-established marks.

81.     For example, as described above, both Giles and Riddick-Grisham intentionally republished through the internet and a listserv a statement from one of FIG's websites, which wrongly suggests that FIG's confusing LCP-C credential is a necessary prerequisite to practice a professional life care planner: "FIG's Life Care Planning – Certified (LCP-C) credential was designed for the medical, healthcare, and rehabilitation provider wishing to gain the competency learning and comprehensive knowledge which is necessary to practice as a QUALIFIED Life Care Planner." *See* Ex. A.

82.     In addition to contributing to FIG's infringement of the Commission's common law trademarks through the promotion and dissemination of FIG's confusing "credential," both Giles and Riddick-Grisham induced FIG to violate the Lanham Act.

83.     Giles was the person who purposefully authored this misleading statement for FIG, and it was Giles who specifically designed FIG's LCP-C credential, so that it would be easily confused with the Commission's CERTIFIED LIFE CARE PLANNER (CLCP)™ and CLCP™ marks.

84.     Moreover, as described above, Riddick-Grisham spearheaded a campaign to falsely suggest to the life care planning industry that the Commission no longer held a trademark for the CLCP™ certification—intentionally

encouraging and giving FIG "permission" to develop a new "credential" without regard to the Commission's well-established common law marks.

85.     Indeed, it is believed that Giles and Riddick-Grisham worked together, hand-in-glove, to launch FIG's newly minted "credential"—purposefully paving the way for FIG's willful violation of the Lanham Act.

86.     The Commission has been damaged and will continue to accrue damages to the value of its business and common law trademarks as a proximate result of the intentional encouragement and assistance that Giles and Riddick-Grisham provided to FIG to violate the Lanham Act.  Moreover, the Commission has already sustained damage to its good will and standing in the life care planning professional community and marketplace.

WHEREFORE, Plaintiffs respectfully request that this Court enter Judgment in favor of Plaintiffs and against Giles and Riddick-Grisham and grant Plaintiffs all of the following relief:

A.     Adjudge that Giles and Riddick-Grisham are jointly and severally liable, along with FIG, for the FIG's violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A);

B.     Award the Plaintiffs compensatory damages, treble damages, pre-judgment and post-judgment interest, and costs;

C.      Declare this to be an exceptional case pursuant to 15 U.S.C. § 1117(a) and award Plaintiffs their attorneys' fees and costs; and

E.      Grant Plaintiffs such other and further relief as this Court deems just and proper.

## COUNT THREE
### False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Against Defendant FIG)

87.     Plaintiffs incorporate by reference each of the allegations set forth in the foregoing paragraphs 1-86 above as if fully set forth herein.

88.     FIG has committed false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) by making a number of false or misleading descriptions of fact in a commercial advertisement about its credentials and services and those of its competitors.

89.     For example, FIG published in interstate commerce false statements in a PDF advertisement on the following website: https://www.lifecareplanningcertification.com/wp-content/uploads/2021/10/LCP-C-Certification-Guidelines-10-28-21.pdf. A true and correct copy of the foregoing website is attached hereto as "Exhibit C."

90.     On page 12 of the PDF advertisement, FIG falsely stated: "FIG has established a peer-reviewed, published methodology for the LCP-C credential."

This statement is patently false because FIG has not established a peer-reviewed, published methodology for the LCP-C credential.

91.    Moreover, it is deceptive because FIG has not published its methodology for its LCP-C in any peer-reviewed journal, as the credential was only created within the last few months.

92.    Similarly, on that same page, FIG falsely asserted that "FIG is the only educational provider and certification which recognizes all backgrounds in the Life Care Planning industry." This statement is also false and misleading because the Commission also recognizes all backgrounds in the life care planning industry.

93.    Furthermore, on page 12 of the PDF advertisement, FIG poses the following question: "How is FIG's certification different from other programs – why choose LCP-C?"

94.    In response to this question, on page 13, FIG falsely and misleadingly asserts: "FIG's LCP-C certification is the only certification that recognizes the fusion of all perspectives in Life Care Planning."

95.    This statement is false and misleading because it suggests that FIG's competitors, such the Commission's CLCP™ certification, do not also offer comprehensive certification in life care planning from all perspectives. Indeed, Commission's CLCP™ certification has been providing comprehensive

certification in life care planning from all perspectives for over a quarter of a century.

96.     Moreover, FIG's advertisement repeatedly references by name the Commission's CLCP™ certification as a point of comparison.

97.     These are just a few examples of the materially false and misleading statements that FIG published in its advertisements in interstate commerce that were intentionally designed to deceive those in the field of life care planning or those wishing to enter the field of life care planning. Indeed, as described above, the Commission received a number of communications from members of the life care planning community who were misled and confused by FIG's advertisements.

98.     Furthermore, the Commission has been and likely will continue to be injured as a proximate result of FIG's misrepresentations, either by direct diversion of sales and/or by a lessening of goodwill associated with its CLCP™ certification.

WHEREFORE, Plaintiffs respectfully request that this Court enter Judgment in favor of Plaintiffs and against FIG and grant Plaintiffs all of the following relief:

A.     Adjudge that FIG has committed false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B);

B.     Award the Commission compensatory damages, treble damages, disgorgement of FIG's profits, pre-judgment and post-judgment interest, and costs for FIG's violation;

C.     Declare this to be an exceptional case pursuant to 15 U.S.C. § 1117(a) and award Plaintiffs their attorneys' fees and costs; and

E.     Grant Plaintiffs such other and further relief as this Court deems just and proper.

## COUNT FOUR
### Defamation *Per Se* & Slander
### (Against Defendants Giles & Riddick-Grisham)

99.     Plaintiffs incorporate by reference each of the allegations set forth in the foregoing paragraphs 1-98 above as if fully set forth herein.

100.     Giles defamed Plaintiffs by verbally and falsely claiming to a number of rehabilitation professionals that the Commission and Dr. May would not allow FIG to train nurses to receive the CLCP™ credential.

101.     Such statements are patently false and defamatory because a substantial number of life care planning professionals who have received the CLCP™ credential are registered nurses. Indeed, both Dr. May and the Commission have always and will continue to encourage and support nurses trained in life care planning to pursue the CLCP™ credential.

102.     Furthermore, in a written post that she published on November 10, 2021 to the IALCP's listserv, Giles suggested that the Commission sought to "alienate and discriminate against nurses"—which is also a malicious lie.

26

103. Moreover, in her post, Giles encouraged "anyone to contact FIG directly to discuss the facts." Upon information and belief, the IALCP members who contacted Giles directly to discuss "the facts," were provided with a more explicit false narrative that Dr. May and the Commission were "discriminating" against nurses who sought to receive the CLCP™ credential.

104. Giles' statements were made with actual malice because her unambiguous intent was to falsely incite anger against and tarnish the reputations of the Commission and Dr. May among nurses and the members of the IALCP's listserv (many of whom are nurses, who work in the life care planning profession).

105. Indeed, a number of written statements published by Giles and FIG—and subsequently republished by Riddick-Grisham—relating to FIG's new LCP-C "credential" were designed to falsely insinuate and mislead life care planning professionals to believe that the Commission was "discriminating" against nurses who sought to receive the CLCP™ certification.

106. For example, when read in light of Giles' false accusations of the Commission "discriminating" against nurses, Giles' and Riddick-Grisham's malicious intent becomes clear through repeated, wide dissemination of the following misleading and suggestive statement originally published on FIG's website:

> At FIG, we embrace all backgrounds in the medical, healthcare, and rehabilitation fields wanting to specialize

27

> in Life Care Planning.... So FIG has decided to develop a
> certification which is open to all qualified medical,
> healthcare, and rehabilitation professionals who are
> licensed or certified in their primary practice and have
> successfully completed a certification class in Life Care
> Planning.

107. In addition to propagating the false narrative that the Commission was "discriminating against nurses" who sought CLCP™ certification, as also described above, Riddick-Grisham began verbally contacting individual members of the IALCP in the fall of 2021, falsely claiming that the Commission no longer held a trademark on the CLCP™ certification and that the Commission and Dr. May "do not pay their bills."

108. Such statements falsely paint the Plaintiffs as unprofessional and dishonest.

109. These statements are false and designed with actual malice to undermine and tarnish the professional reputations of the Commission and Dr. May.

110. The false statements by both Giles and Riddick-Grisham constitute defamation *per se* because they prejudice Plaintiffs' professional reputations and their business.

111. Moreover, Giles' and Riddick-Grisham's false statements were made with actual malice and proximately caused both Dr. May and the Commission to

suffer damages in the form of pecuniary loss, reputational damage, and loss of standing.

112.    Indeed, Giles' and Riddick-Grisham's false statements continue to tarnish the good will, value, and professional reputation associated with the CLCP™ certification that Dr. May and the Commission have worked so hard to develop over the past twenty-five (25) years.

WHEREFORE, Plaintiffs respectfully request that this Court enter Judgment in favor of Plaintiffs and against Giles and Riddick-Grisham, and grant Plaintiffs all of the following relief:

A.      Adjudge that Giles and Riddick-Grisham have unlawfully defamed Plaintiffs;

B.      Award the Plaintiffs compensatory damages, punitive damages, pre-judgment and post-judgment interest, and costs for Giles' and Riddick-Grisham's tortious behavior; and

E.      Grant Plaintiffs such other and further relief as this Court deems just and proper.

## COUNT FIVE
### Tortious Interference with
### Prospective Business Advantages and Relationships
### (Against All Defendants)

113.    Plaintiffs incorporate by reference each of the allegations set forth in the foregoing paragraphs 1-112 above as if fully set forth herein.

114.   The Defendants jointly and severally damaged the Commission and Dr. May by tortiously interfering the Plaintiffs' prospective business advantages and relationships in the life care planning community and marketplace.

115.   Specifically, both Dr. May and the Commission have invested many years, working hard to develop their professional reputations, expertise, and ongoing business relationships with members of the life care planning community.

116.   As described above, the Commission's CLCP™ credential and other proprietary certifications are part of Plaintiffs' ongoing business concern, which constitute a valid business expectancy with a probability of future economic profit. Indeed, many members of the life care planning community who have received certification in one area of life care planning from the Plaintiffs, often seek out additional certifications—such as MSCC™—from the Commission as repeat customers.

117.   All of the Defendants are well-aware of this fact, which is why FIG and its accomplices promoted certifications that are confusingly similar to the Commission's well-established marks and defamed Plaintiffs' professional reputations—which caused Plaintiffs to lose professional clients and potential repeat business.

118.   Absent the unfair competition and defamation committed by the Defendants, there existed a reasonable certainty that Plaintiffs would have realized

additional repeat business relating to consulting opportunities, speaking engagements, and additional certifications.

119.    Accordingly, Defendants' tortious misconduct has proximately caused both Dr. May and the Commission to suffer damages in the form of pecuniary loss, reputational damage, lost good will, and loss of standing in their profession and community.

WHEREFORE, Plaintiffs respectfully request that this Court enter Judgment in favor of Plaintiffs and against all Defendants, and grant Plaintiffs all of the following relief:

A.    Adjudge that all Defendants have jointly and severally damaged the Commission and Dr. May by tortiously interfering the Plaintiffs' prospective business advantages and relationships;

B.    Award the Plaintiffs compensatory damages, punitive damages, pre-judgment and post-judgment interest, and costs for Defendants' tortious behavior; and

E.    Grant Plaintiffs such other and further relief as this Court deems just and proper.

## COUNT SIX
## Business Conspiracy, Virginia Code §§ 18.2-499 & 18.2-500
## (Against All Defendants)

120.   Plaintiffs incorporate by reference each of the allegations set forth in the foregoing paragraphs 1-119 above as if fully set forth herein.

121.   The Defendants proximately damaged the Plaintiffs by engaging in a Business Conspiracy in violation of Virginia Code §§ 18.2-499 & 18.2-500.

122.   As extensively described above, Giles, Riddick-Grisham, and FIG willfully and maliciously acted in concert and conspired to violate the Lanham Act and injure the Plaintiffs' reputation, trade, business, and profession through defamation, unfair competition, and by tortiously interfering the Plaintiffs' prospective business advantages and relationships.

123.   Specifically, Riddick-Grisham undermined the credibility and attacked the professionalism and honesty of Dr. May and the Commission by verbally spreading false rumors among the life care planning industry that Plaintiffs did not "pay their bills" and no longer held a trademark on the CLCP™ credential.

124.   Simultaneously, Giles engaged in a false whisper campaign among the life care planning community that Dr. May and the Commission were "discriminating against nurses" as the reason for FIG's suspension as an educational program for the CLCP™ credential.

32

125.   By collaborating to sow these false rumors among the life care planning community, Riddick-Grisham and Giles laid the groundwork for and aided and abetted FIG's launch of its newly minted credentials, which Giles designed to be confusingly similar to the Commission's well-established common law trademarks.

126.   Riddick-Grisham and Giles further conspired to promote and market FIG's new credential by republishing and disseminating FIG's misleading and confusing statement that the LCP-C credential is a necessary prerequisite to practice as a "QUALIFIED" professional life care planner: "FIG's Life Care Planning – Certified (LCP-C) credential was designed for the medical, healthcare, and rehabilitation provider wishing to gain the competency learning and comprehensive knowledge which is necessary to practice as a QUALIFIED Life Care Planner." *See* Ex. A.

127.   Finally, in an effort to bolster and promote FIG's confusing new "credentials," Riddick-Grisham conspired with a small number of IALCP members (including Giles) to coerce and manipulate the nomination and selection process so that Giles would receive the IALCP's "Outstanding Life Care Planning Educator Award." This occurred within 5-days of FIG's and Giles' new LCP-C certification announcement.

33

128.  The Plaintiff have suffered pecuniary damages, along with substantial injury to their professional reputations, good will, and business prospects as a direct results of Defendant's business conspiracy in violation of Virginia Code §§ 18.2-499 & 18.2-500.

WHEREFORE, Plaintiffs respectfully request that this Court enter Judgment in favor of Plaintiffs and against Giles and Riddick-Grisham, and grant Plaintiffs all of the following relief:

A.  Adjudge that all Defendants have injured the Plaintiffs by unlawfully engaging in a business conspiracy in violation of Virginia Code §§ 18.2-499 & 18.2-500;

B.  Award the Plaintiffs compensatory damages, punitive damages, pre-judgment and post-judgment interest, and costs for Defendants' tortious behavior;

C.  Award Plaintiffs their attorneys' fees and costs; and

D.  Grant Plaintiffs such other and further relief as this Court deems just and proper.

## COUNT SEVEN
### Injunctive Relief Sought

129.  Plaintiffs incorporate by reference each of the allegations set forth in the foregoing paragraphs 1-128 above as if fully set forth herein.

130. Plaintiffs seek to preliminarily and permanently enjoin FIG, its officers, agents, servants, employees, customers, and those in active concert or participation with any of them, from violating the Lanham Act.

131. Specifically, this Court should enjoin FIG and its associates from using its confusingly similar "Life Care Planning – Certified" and its acronym, "LCP-C" in interstate commerce.

132. In addition, this Court should enjoin FIG and its associates from using its confusingly similar "Medicare Set Aside-Certified" credential and its acronym, "MSA-C" in interstate commerce.

133. As demonstrated above, Plaintiffs are likely to succeed on the merits of their Lanham Act claims against FIG.

134. Moreover, FIG's continued violation of the Lanham Act has caused and will continue to cause Plaintiffs immediate and irreparable harm, which cannot not be remedied by an award of damages alone.

135. Specifically, because of FIG's violation, Plaintiffs have experienced, *inter alia*, loss of goodwill, damage to their reputation, and loss of business opportunities, market share and brand loyalty relating to their well-established marks.

136. Accordingly, Plaintiffs' loss of good will, reputation, brand loyalty, and market share are all damages that are not readily quantifiable or remedied with monetary damages alone.

137. In addition to causing Plaintiffs immediate irreparable harm, the balance of hardships weighs heavily in favor of this Court issuing an injunction because Defendants have invested little or no effort or resources in developing their new "credentials." In contrast, Plaintiffs have invested over twenty-five and eighteen years of effort and resources into developing their respective CLCP™ and MSCC™ credentials.

138. An injunction would weigh in favor of the public's interest and protect Plaintiffs' customers from potential confusion and deception.

WHEREFORE, Plaintiffs respectfully request that this Court enter Judgment in favor of Plaintiffs and against FIG and grant Plaintiffs all of the following relief:

A.     Adjudge that FIG has committed unfair competition, trademark infringement, and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a);

B.     Preliminarily and permanently enjoin FIG, its officers, agents, servants, employees, customers, and those in active concert or participation with any of them, from violating the Lanham Act; and

36

C.      Grant Plaintiff such other and further relief as this Court deems just

and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues to triable, pursuant to

Rule 38 of the Federal Rules of Civil Procedure.

DATED:  January 21, 2022

/s/ William Shields
William G. Shields (VSB #14200)
**THE SHIELDS LAW FIRM, PLLC**.
11512 Allecingie Pkwy., Ste C
North Chesterfield, VA 23235
804-594-3966 / 804-594-3855 (fax)
Bill.Shieldsfirm@comcast.net

Lance Rogers
Lance@ RogersCounsel.com
(*pro hac vice* motion forthcoming)
Joseph R. Heffern
Joe@RogersCounsel.com
(*pro hac vice* motion forthcoming)
**ROGERS COUNSEL**
26 E. Athens Ave.
Ardmore, PA 19003
610-649-1880 / 877-649-1880 (fax)

*Counsel for Plaintiffs.*

## **VERIFICATION**

I, V. Robert May III, Rh.D., verify that I am the founder, President, and Chief Executive Officer of the Commission on Health Care Certification, Inc. d/b/a International Commission on Health Care Certification, and that I am authorized to execute this verification on Plaintiffs' behalf. Having read the Verified Complaint, verify that the facts contained therein are true and correct to the best of my knowledge, information, and belief.

I understand that this verification is made subject to the penalties relating to unsworn falsification to authorities, 28 U.S.C. § 1746.

Dated: 01/19/2022

V. Robert May III, Rh.D..