IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

COMMISSION ON HEALTH CARE
CERTIFICATION, INC., *d/b/a* INTERNATIONAL
COMMISSION ON HEALTH CARE
CERTIFICATION, *et al.*,
    Plaintiffs,

v.                                                   Civil No. 3:22cv39 (DJN)

FIG SERVICES, INC., *et al.*,
    Defendants.

### MEMORANDUM OPINION
**(Granting Motion to Dismiss)**

Plaintiffs Commission on Health Care Certification, Inc., doing business as International Commission on Health Care Certification (the "Commission"), and V. Robert May, III, bring this action against Defendants FIG Services, Inc. ("FIG"), Shelene J. Giles and Susan Riddick-Grisham, alleging violations of the Lanham Act, defamation, tortious interference with Plaintiffs' prospective business advantages and relationships, and Business Conspiracy in violation of Virginia Code §§ 18.2-499 & 18.2-500 between and among all of the Defendants. This matter now comes before the Court on FIG's and Giles' (collectively, the "N.C. Defendants"), Motion to Dismiss (ECF No. 16) for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court will GRANT the Motion (ECF No. 16).

### I.     BACKGROUND

"Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage

following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citation omitted). If a federal court reviews "only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint," then a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive a motion to dismiss under Rule 12(b)(2). *Id.* at 268 (citations omitted). "[T]he court must construe all relevant pleading allegations in the light most favorable to [plaintiffs], assume credibility, and draw the most favorable inferences for the existence of jurisdiction," *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), though the Court need not consider only Plaintiffs' proof of personal jurisdiction to decide which inferences it will make, *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993). "[W]here the defendant has provided evidence which denies facts essential for jurisdiction, the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant has presented evidence." *Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925, 926 (W.D. Va. 1990) (citation omitted). Based on these standards, the Court accepts the following facts for the purpose of resolving the instant Motion.

A.  **Factual Background**

Plaintiff the Commission operates as the oldest and largest international certifying agency in the field of life care planning service delivery in the United States and Canada, and the only all-inclusive agency to offer its Certified Life Care Planner ("CLCP") and Canadian Certified Life Care Planner ("CCLCP") credentials to qualified health care professionals from many diverse academic degree education and professional backgrounds. (Compl. ¶ 1.) The Commission is a privately held corporation, organized under the laws of the Commonwealth of Virginia, and located in Midlothian, Virginia. (Compl. ¶ 1.) The Commission owns the

common law trademarks, CERTIFIED LIFE CARE PLANNER™ and CLCP™, which it has continuously used in interstate commerce since at least March of 1996 for testing and certifying professional life care planners. (Compl. ¶ 2.) It also owns the common law trademarks, MEDICARE SET-ASIDE CERTIFIED CONSULTANT™ and MSCC™, which it has continuously used in interstate commerce since at least 2004 for testing and certifying professionals trained in Medicare set-aside trust arrangements. (Compl. ¶ 3.) Co-plaintiff May, a doctor of rehabilitation residing in Virginia, founded the Commission and serves as its President and CEO. (Compl. ¶ 4.)

Defendant Giles, a resident of North Carolina, co-owns and serves as President of co-Defendant FIG. (Giles Decl. ¶ 3 (ECF No. 17-1).) FIG is a corporation organized under the laws of the State of North Carolina with a principal office in Canton, North Carolina. (Giles Decl. ¶ 1.) FIG has never been incorporated in Virginia, registered to do business in Virginia, maintained an office in Virginia, or appointed an agent to accept service of process in Virginia. (Giles Decl. ¶ 2.) Collectively, the N.C. Defendants do not have any employees who reside in Virginia, and have never owned, leased, or rented property in Virginia. (Giles Decl. ¶¶ 6-7.) Neither have they targeted Virginia with marketing efforts or advertising campaigns, or taught in-person classes in Virginia. (Giles Decl. ¶¶ 8-9.) Of the approximately one thousand individuals whom FIG has trained, only ten (or one percent), provided a Virginia address at the time of registration. (Giles Decl. ¶ 11.) Eight of those clients attended a virtual class, while two attended an in-person class in North Carolina. (Giles Decl. ¶ 11.) The N.C. Defendants have not presented at any conferences in Virginia or provided life care planning services in Virginia. (Giles Decl. ¶¶ 12-13.) Defendant Riddick-Grisham resides in Virginia Beach, Virginia. (Compl. ¶ 7.)

3

Giles has operated FIG for a number of years as a "pre-approved" educational provider teaching courses for rehabilitation professionals for the Commission's CLCP and MSCC credentials. (Compl. ¶ 24; May Decl. ¶ 8 (ECF No. 21-1).) In particular, for many years, both Giles and FIG have advertised their association with the Virginia-based Commission and its CLCP and MSCC marks to market themselves and the educational courses they teach around the country and over the internet. (May Decl. ¶ 8.) Their association with the Commission and the Commission's approval of them to teach courses for the Commission's CLCP and MSCC credentials has served as an integral part of their business and the professional services they offer. (May Decl. ¶ 8.)

Specifically, Giles applied to the Commission to receive her MSCC and CLCP certifications in 2005 and 2010 respectively. (May Decl. ¶¶ 9-10.) In turn, FIG applied through Giles to the Commission to become a pre-approved educational provider for the CLCP and MSCC certifications in 2014, which the Commission then granted and renewed upon FIG's application in 2017. (May Decl. ¶¶ 11-12.) Accordingly, FIG's certificates of completion for its courses represented that "This Course has been pre-approved by the Commission for the [30/120] hour educational requirement for the [MSCC/CLCP] exam." (May Decl. ¶¶ 13-16.) And the N.C. Defendants hold out their status as pre-approved by the Commission for its CLCP and MSCC certifications on FIG's website and Giles' resume. (May Decl. ¶¶ 17-18.)

Further, the N.C. Defendants have used the Commission's resources, including its online CLCP directory and computer lists, to locate CLCP certified professionals. (May Decl. ¶¶ 21-22.) For example, on August 1, 2016, when the Commission's online CLCP directory proved temporarily unavailable, Giles e-mailed the Commission seeking its assistance in locating certified CLCP professionals. (May Decl. ¶ 21.) And on January 24, 2017, at Giles' direction,

4

Kim Wages (FIG's Education/Project Manager) sought to access the Virginia-based Commission's CLCP computer lists to find a registered nurse to manage a catastrophic case. (May Decl. ¶ 22.) Moreover, the Commission lists FIG as an approved educational provider for the CLCP and MSCC credentials on the Commission's website. (May Decl. ¶ 23.)

Within the last year, the Commission raised with Giles a number of serious concerns that it had relating to FIG's CLCP training program, curriculum, and administration. (Compl. ¶¶ 25-28.) Accordingly, on May 18, 2021, the Commission suspended FIG as an authorized training program for the CLCP certification. (Compl. ¶ 33.) On June 4, 2021, Giles wrote to the Commission outlining its proposed reformations and concluded, "We look forward to continuing our relationship with [the Commission] and the reposting of FIG as an approved educational provider for the [Commission]." (May Decl. ¶¶ 24-25.) Despite repeated attempts from the Commission to work with Giles to bring FIG's training program into compliance with its standards for CLCP certification, Giles ultimately stopped cooperating with the Commission. (Compl. ¶ 34.) The Commission then revoked FIG's authority to serve as a training program for the Commission's trademarked credentials. (Resp. at 4.) Yet, as late as February 7, 2022, the N.C. Defendants issued a Certificate of Completion bearing the representation that the class had been preapproved by the Commission to satisfy the MSCC exam preparation requirements. (May Decl. ¶ 27.)

Defendant Riddick-Grisham has a good friendship with Giles and questioned FIG's suspension with other industry professionals. (Compl. ¶ 36.) Riddick-Grisham serves as the current Chair of the International Academy of Life Care Planning ("IALCP"), which, with over 500 members, comprises the life care planning section of the International Association of

5

Rehabilitation Professionals ("IARP"), a professional association to which many CLCP professionals belong. (Compl. ¶¶ 36-37.)

In the fall of 2021, in apparent retribution for the Commission's suspension of Giles' and FIG's authority to train students for the CLCP credential, Riddick-Grisham embarked on a campaign to discredit and malign May and the Commission among the professional life care planning community. (Compl. ¶ 38.) Specifically, Riddick-Grisham began contacting individual members of the IALCP to discuss Giles' and FIG's suspension, while falsely claiming that the Commission no longer held a trademark on the CLCP certification and that the Commission and Dr. May "do not pay their bills." (Compl. ¶ 39.) Riddick-Grisham began spreading these rumors about Dr. May and Commission beyond the IALCP to the IARP Board of Directors. (Compl. ¶ 41.)

On or about November 6, 2021, FIG began advertising that it would be offering a brand-new life care planning credential, "Life Care Planning - Certified," designated by the acronym, "LCP-C." (Compl. ¶ 45.) One of FIG's websites incorrectly suggested that LCP-C credential is a necessary prerequisite to practice as a qualified professional life care planner: "FIG's Life Care Planning-Certified (LCP-C) credential was designed for the medical, healthcare, and rehabilitation provider wishing to gain the competency learning and comprehensive knowledge which is necessary to practice as a QUALIFIED Life Care Planner." (Compl. ¶ 46.) In an effort to specifically target life care planning professionals, Giles subsequently published this same statement to an online LinkedIn account that she maintained. (Compl. ¶ 47.) The N.C. Defendants did not create any of the information on FIG's website in Virginia or upload it to the website from Virginia. (Giles Decl. ¶ 16.)

6

Moreover, on or about November 8, 2021, Riddick-Grisham republished portions of the same statement on a computer listserv maintained by IALCP and also in an e-mail to a number of members of the IALCP, entitled "A new LCP Certification." (Compl. ¶ 48.) In the days immediately following FIG's launch of its new LCP-C credential, the IALCP awarded Giles its Outstanding Life Care Planning Educator Award. (Compl. ¶ 60.) FIG has not issued any of its new certifications to any individual who provided a Virginia address at the time of application. (Giles Decl. ¶ 15.)

### B. Plaintiffs' Complaint

On January 25, 2022, Plaintiffs filed their Verified Complaint (ECF No. 1), raising seven claims for relief based on the above allegations. (ECF No. 22.) Counts One through Three assert Lanham Act claims under 15 U.S.C. § 1125(a)(1)(A) - (B), for its violation by FIG (Count One, Compl. ¶¶ 68-77), aiding and abetting FIG's violations by Giles and Riddick-Grisham (Count Two, Compl. ¶¶ 78-86) and false advertising by FIG (Count Three, Compl. ¶¶ 87-98). Count Four asserts a claim for defamation *per se* and slander against Giles and Riddick-Grisham. (Compl. ¶¶ 99-112.) Counts Five and Six assert, against all Defendants, tortious interference with prospective business advantages and relationships (Count Five, Compl. ¶¶ 113-19) and Business Conspiracy in violation of Virginia Code §§ 18.2-499 and -500 (Count Six, Compl. ¶¶ 120-28). Finally, Count Seven requests that the Court enjoin FIG from use of its infringing marks. (Compl. ¶¶ 129-38.) Based on these claims, Plaintiffs seek compensatory and punitive damages and attorneys' fees. Plaintiff May, as founder, President and CEO of the Commission, verified that the facts contained within the Complaint proved true and correct to the best of his knowledge, information, and belief. (Compl. at 38)

7

### D. The N.C. Defendants' Motion to Dismiss

In response to the Complaint, the N.C. Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (ECF No. 16.) The N.C. Defendants argue that Plaintiff cannot establish that this Court has general or specific personal jurisdiction over the N.C. Defendants. (Mem. Supp. at 2-6.) Specifically, the N.C. Defendants contend that they do not regularly solicit or transact business in Virginia, derive substantial revenue from services rendered in Virginia, or otherwise engage in a persistent course of conduct directed toward Virginia. (Mem. Supp. at 3.) The N.C. Defendants argue that their past interactions with Plaintiffs do not provide a basis for personal jurisdiction. Defendants attack the nature of their contacts with Plaintiffs, pointing to *Tire Engineering* to show that they fall short of substantial collaboration with a forum resident amounting to a joint enterprise. (Reply at 2 (citing *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012)).) Instead, Defendants contend that "Plaintiffs' situs is Defendants' only purportedly relevant link to Virginia." (Reply at 3.) In support of their Motion to Dismiss, the N.C. Defendants attached a Declaration by Defendant Shelene J. Giles, ("Giles Decl." (ECF No. 17-1)) co-Defendant FIG's President and co-owner, who described FIG's business operations and all relevant contacts with Virginia.

Plaintiffs responded to this Motion on March 3, 2022, arguing that the N.C. Defendants' long-standing business relationship with Plaintiffs, who reside in Virginia, gives this Court personal jurisdiction over the N.C. Defendants. (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Resp.") at 7-12 (ECF No. 21).) Additionally, Plaintiffs contend that this Court has personal jurisdiction over the N.C. Defendants, because they conspired with Defendant Riddick-Grisham, a Virginia resident, to

8

commit torts. (Resp. at 13.) In support of their opposition brief, Plaintiffs attached the Affidavit of Plaintiff V. Robert May III, RH.D., ("May Decl." (ECF No. 21-1)), the founder, President and CEO of co-Plaintiff the Commission, who described the N.C. Defendants' business relationship with Plaintiffs.

On March 9, 2022, the N.C. Defendants filed their Reply (ECF No. 22), rendering the Motion to Dismiss ripe for review.

## II. APPLICABLE LAW

Determinations of personal jurisdiction require a two-step inquiry. First, a court must find that the long-arm statute of the forum state authorizes the exercise of jurisdiction over a nonresident defendant. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Then, the court must find that the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. *Id.*

Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of the Fourteenth Amendment Due Process Clause, "the two-prong test collapses into a single inquiry when Virginia is the forum state." *Tire Eng'g & Distribution, LLC*, 682 F.3d at 301. The Due Process Clause of the Fourteenth Amendment requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Within those parameters, a court may find that it has either general or specific personal jurisdiction over a defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). General personal jurisdiction exists over defendants with "continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any

9

reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). When the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities," a court can assert general jurisdiction over a corporate defendant. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (quoting *Int'l Shoe Co.* 326 U.S. at 318)). Otherwise, a court may exercise specific personal jurisdiction only if a defendant's minimum contacts with the forum state form the basis for the claims in question. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). Here, Plaintiffs assert only specific personal jurisdiction; consequently, the Court will not address general jurisdiction. (Resp. at 7.)

With respect to specific personal jurisdiction, the Fourth Circuit has established a three-part test, requiring trial courts to consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal quotations and citations omitted). Alternatively, because personal jurisdiction constitutes an individual right, a party may waive that right and submit to the personal jurisdiction of a court by appearance or by providing express or implied consent in "[a] variety of legal arrangements." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982).

Under the first prong of the test for specific jurisdiction, the Fourth Circuit has enumerated several nonexclusive factors to consider, including:

- whether the defendant maintains offices or agents in the forum state,
- whether the defendant owns property in the forum state,

10

- whether the defendant reached into the forum state to solicit or initiate business,
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state,
- whether the parties contractually agreed that the law of the forum state would govern disputes,
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,
- the nature, quality and extent of the parties' communications about the business being transacted, [and]
- whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs Corp.*, 561 F.3d at 278 (cleaned up). "If, and only if . . . the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." *Id.*

"The second prong of the test for specific jurisdiction . . . requires that the defendant's contacts with the forum state form the basis of the suit." *Id.* at 278-79 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414). Finally, the third prong "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Id.* at 279. Specifically, a court may evaluate "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and, (5) the interests of the states in furthering substantive social policies." *Id.* (citing *Burger King Corp.*, 471 U.S. at 477). With this standard in mind, the Court now turns to whether it can exercise personal jurisdiction over the N.C. Defendants.

11

### III. DISCUSSION

The Court finds that the exercise of personal jurisdiction over the N.C. Defendants does not comport with the Due Process Clause of the Fourteenth Amendment, because they did not purposefully avail themselves of the privilege of conducting activities in Virgina. Plaintiffs base their claims against the N.C. Defendants on their infringement on Plaintiffs' trademarks, various torts, and conspiracy with Riddick-Grisham to commit those torts. The contacts that support Plaintiffs' assertion of jurisdiction predominantly arise from its business affiliation with the N.C. Defendants, specifically, the N.C. Defendants' status as an approved educator for the professional certifications that the Virginia-based Plaintiffs offer. Plaintiffs allege that the N.C. Defendants hold out their Commission-approved status on their website, course certificates and Giles' resume. In turn, the Commission lists the N.C. Defendants as an approved educator on its website. Plaintiffs cite three specific communications from the N.C. Defendants to Plaintiffs regarding that status in 2014, 2017 and 2021. Additionally, Plaintiffs allege two specific instances in which the N.C. Defendants reached out regarding access to a professional database that the Commission maintains.

While this affiliation between Plaintiffs and the N.C. Defendants gives rise to some contact between the N.C. Defendants and the forum state, the Court must "look to the quality and nature of the contacts in evaluating whether they meet the minimum contacts requirement." *Consulting Engineers Corp.*, 561 F.3d at 279. In *Consulting Engineers Corp.*, the Virginia plaintiff's tort claims against one foreign defendant relied on that defendant's alleged conspiracy with the other foreign defendant to hire plaintiff's employee. *Id.* at 278-82. The plaintiff supported its assertion of jurisdiction with numerous contacts — four telephone calls and twenty-four emails between plaintiff and defendant — negotiating a non-disclosure agreement and

discussing a proposal for professional services. *Id.* at 279. The Fourth Circuit found that those communications did not amount to purposeful availment "of the privilege of doing business in Virginia to an extent sufficient to justify personal jurisdiction." *Id.* It reached this conclusion, because the defendant did not have offices, employees, property or on-going business activity in Virginia. *Id.* at 279-80. Nor did the defendant have any in-person contact with the plaintiff in Virginia; rather, it negotiated and executed the agreement at issue from Colorado, and the parties would not have carried out any work under the agreement in Virginia. *Id.* at 280.

Like in *Consulting Engineers Corp.*, the N.C. Defendants do not have offices or employees in Virginia, nor do they own property there.[1] They have no ongoing business activity in Virginia. The record does not reflect any in-person contact with Plaintiffs in Virginia. The record gives rise to the reasonable inference that the N.C. Defendants corresponded with Plaintiffs regarding their approved educator status from North Carolina, where they conduct their instruction for in-person classes and broadcast virtually. Moreover, the N.C. Defendants have not presented at any conferences in Virginia or provided life care planning services in Virginia.

Plaintiffs proffer that Giles directs continuing education webinars to CLCP professionals, including those living in Virginia, and advertises professional services in trade journals that circulate in Virginia, such as the Journal of Nurse Life Care Planning. (May Decl. ¶¶ 19-20.) However, it proves insufficient that those communications merely reached Virginia; the N.C. Defendants must have purposefully directed them there. *See, e.g., ALS Scan, Inc. v. Digital Serv.*

---

[1] The N.C. Defendants proffer, "in the interest of full disclosure, FIG Services has contracted work out to one individual (an independent contractor) who has a Virginia address on file with FIG Services. This contract work has involved assisting with the preparation of life care plans, primarily for cases pending in Georgia or Florida. None of the contract work has related to cases pending in Virginia." (Giles Decl. ¶ 4.) As Plaintiffs do not argue that this person constitutes an employee rather than an independent contractor, and Plaintiffs' claims do not have any nexus to this individual's work, this fact does not alter the Court's analysis.

13

*Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) ("[A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) *directs* electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State . . .") (emphasis added). Plaintiffs do not, and cannot, allege that requisite intent.

The N.C. Defendants admit that ten of their approximately one thousand students hailed from Virginia. However, these *de minimis* contacts do not contradict the N.C. Defendants' proffer that they have never targeted Virginia with marketing efforts or advertising campaigns. (Giles Decl. ¶¶ 8-9.) Indeed, that low level of Virginian participation corroborates the fact that the N.C. Defendants only conduct generalized marketing campaigns, insufficient to amount to purposeful availment of the benefits and privileges of Virginia law.

In sum, although Plaintiffs argue that the N.C. Defendants reached out to them in Virginia, this assertion, even when augmented with the cited contacts, does not prove sufficient to overcome the factors noted above. As in *Consulting Engineers Corp.*, on these facts, the N.C. Defendants' attenuated contact with Virginia cannot justify the exercise of personal jurisdiction.

The Court rejects Plaintiffs' insinuation that the N.C. Defendants' "long history of conducting business with the Plaintiffs in Virginia," by way of their approval of the N.C. Defendants as educators for their certifications, amounts to a substantial collaboration or a joint-enterprise integral to the dispute. In *CFA Institute*, the Fourth Circuit found personal jurisdiction over a foreign defendant when its representative visited the plaintiff's office in the forum state, "spark[ing] ongoing business transactions" under which the plaintiff and the defendant substantially corresponded and collaborated from afar for approximately ten years. 551 F.3d at 294–95. The court took care to define the parties' collaboration as an "integrated relationship"

14

under which the parties "work[ed] jointly on an activity, especially to produce or create something." *Id.* at 295-95 (quoting *The New Oxford American Dictionary* 332 (2d ed. 2005)). Accordingly, the court found purposeful availment, because the "defendant substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute." *Tire Eng'g & Distribution, LLC*, 682 F.3d at 302 (describing reasoning in *CFA Institute*).

The facts of this case bear sharp contrast to those of *CFA Institute*. Here, the record does not show that the N.C. Defendants ever contacted Plaintiffs in person in Virginia. The few contacts reflected between the N.C. Defendants and Plaintiffs occurred remotely. Additionally, the parties' affiliation hardly amounts to substantial collaboration or a joint enterprise. The N.C. Defendants merely obtained their status as a pre-approved education provider for professional certifications issued by Plaintiffs and operated within the same professional circles. The N.C. Defendants offered courses prerequisite to Plaintiffs' credentials, but did so entirely independently of Plaintiffs' operations. Nothing in the record shows any degree of an integrated relationship, or working jointly on an activity to produce or create something. Accordingly, the professional affiliation between the parties does not justify the exercise of personal jurisdiction over the N.C. Defendants.

Plaintiffs also claim that jurisdiction exists based on its allegations of conspiracy, arguing that the Court has personal jurisdiction over the N.C. Defendants, because they conspired with Virginia resident Riddick-Grisham to carry out a conspiracy in Virginia. To establish personal jurisdiction based on a conspiracy, a plaintiff must "make a plausible claim (1) that a conspiracy existed; (2) that the [ ] defendants participated in the conspiracy; and (3) that a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with Virginia to subject that

15

conspirator to jurisdiction in Virginia." *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013). A plaintiff cannot meet this requirement with "bare allegations." *Lolavar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir. 2005); *see also Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) ("[T]he plaintiff must plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." (internal quotation marks omitted)).

Here, Plaintiffs offer nothing more than bare allegations and have failed to make a plausible claim that a conspiracy existed. Plaintiffs contend that "Giles, Riddick-Grisham, and FIG willfully and maliciously acted in concert and conspired to violate the Lanham Act and injure the Plaintiffs' reputation, trade, business, and profession through defamation, unfair competition, and by tortiously interfering the Plaintiffs' prospective business advantages and relationships." (Compl. ¶ 122.) Plaintiffs make other conclusory allegations to this effect but fail, however, to plead any *facts* that the N.C. Defendants acted in concert with Riddick-Grisham. For example, although Plaintiffs argue that "FIG, Giles, and Riddick-Grisham coordinated false attacks on Dr. May's character" the factual allegations prove devoid of any evidence of coordination, collaboration, or agreement between the N.C. Defendants and Riddick-Grisham. (Resp. at 13.) Here, Plaintiffs' allegations describe false statements made by the N.C. Defendants, separate false statements made by Riddick-Grisham, and Riddick-Grisham's republication of the N.C. Defendants' false statements. (Compl. ¶¶ 100-12.) But conspiracy requires a "common plan," and here no facts evidence that the N.C. Defendants devised such a scheme with Riddick-Grisham. *See, e.g., Lolavar*, 430 F.3d at 230 (noting the "common plan" requirement) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)). Plaintiffs' speculation that the N.C. Defendants coordinated their activities to injure

them in Virginia "does not suffice to allege a plausible claim of the existence of a Conspiracy." *Unspam*, 716 F.3d at 330. Plaintiffs, therefore, cannot proceed on a conspiracy theory of specific jurisdiction. *Id.* at 229.

"Because a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just." *Consulting Engineers Corp.*, 561 F.3d at 277–78 (cleaned up). The N.C. Defendants have not made such substantial contacts here. Given the undisputed facts in this case, the Court must find that the N.C. Defendants did not purposefully avail themselves of the privilege of doing business in Virginia. Because Plaintiffs failed to meet the first prong of the Fourth Circuit's test for specific personal jurisdiction, Plaintiffs' claims against the N.C. Defendants cannot survive the Motion to Dismiss. The Court need not address whether this action arose out of the N.C. Defendants' insignificant contacts with Virginia or whether exercising personal jurisdiction over the N.C. Defendants would prove constitutionally reasonable. *See Consulting Eng'rs Corp.*, 561 F.3d at 278 (holding that a court need not consider prongs two and three if plaintiff does not satisfy the first prong). Thus, the Court lacks personal jurisdiction over the N.C. Defendants.

## IV. CONCLUSION

For the foregoing reasons, the Court will GRANT the N.C. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 16) and will DISMISS WITHOUT PREJUDICE Plaintiffs' claims against them.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: May 26, 2022